IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LEE CASEY, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CV3028 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (the "Act") for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Commissioner has determined that plaintiff's entitlement to disability insurance benefits terminated at the close of May 1995, plaintiff was overpaid disability insurance benefits and child's insurance benefits in the amount of $48,313, and plaintiff was not entitled to waiver of recovery of the overpaid benefits. Upon review, the Court finds the Commissioner's decision should be affirmed.

### I. BACKGROUND

Pursuant to an application dated March 27, 1987, plaintiff was awarded disability insurance benefits based on statutory blindness (Tr. 36-42). Plaintiff generally maintained full-time employment while he received his benefits (Tr. 29, 332).

From August 1988 to May 1993, plaintiff worked as the director of religious education at St. Patrick's Parish in Neola, Iowa (Tr. 329-330). In December 1988, plaintiff hired the woman who would become his wife, Dawn Casey, at the rate of $4 per hour to assist him in performing his work (Tr. 333, 306, 353). Mrs. Casey's duties included driving plaintiff to meetings, reading to the plaintiff, and updating church records (Tr. 235, 291).

From February 1995 through December 1998, plaintiff worked as a chaplain at St. Anthony's Hospital in Amarillo, Texas (Tr. 331, 29). This position required plaintiff to be "on call" 24-hours per day several times per month (Tr. 29-30). Plaintiff continued to hire his wife to provide assistance (Tr. 30-31). One of the reasons plaintiff hired his wife was that she was the only person who could provide plaintiff immediate transportation to the hospital when necessary (Tr. 30). In addition to providing transportation, Mrs. Casey's duties included reading to the plaintiff and assisting plaintiff with the new duties he had as a chaplain (Tr. 62, 341). When plaintiff took the chaplain position, he started paying his wife $20 per hour (Tr. 31, 342). Plaintiff testified that the increased rate of pay was based on several facts: Mrs. Casey's work schedule was varied and unpredictable, her work was only part-time, the rate would help her build up earnings for Social Security, and the Texas Commission for the Blind did not have any regulations on the

-2-

compensation paid to blind assistants (Tr. 31-32).  Plaintiff and his wife filed joint federal income tax returns on which plaintiff's wife reported her wages as income, and plaintiff reported the wages as a deduction (Tr. 72-129).

On March 30, 1998, SSA informed plaintiff that his disability benefits were being terminated at the close of May 1995 due to the performance of substantial gainful activity ("SGA") since March 1995 (Tr. 44-46, 161).  Because plaintiff received benefits after May 1995, SSA determined he had been overpaid disability insurance benefits and child's insurance benefits in the amount of $48,313 from June 1995 through August 1998 (Tr. 161, 288-289).[1]

On July 22, 1998, plaintiff requested that SSA reconsider its decision to terminate his benefits (Tr. 48). Plaintiff indicated that he did not believe his earnings constituted SGA because the wages he paid his wife for assistance were deductible impairment related work expenses ("IRWE"), and once those expenses were deducted, his earnings were below the SGA level (Tr. 48).  The SSA affirmed its prior determination, and plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 52-57).

---

[1] SSA determined plaintiff was overpaid disability insurance benefits in the amount of $37,973 and child's insurance benefits in the amount of $10,340 (Tr. 161).

-3-

A hearing was held on September 15, 2000 (Tr. 25-35). In a decision dated February 13, 2001, the ALJ determined Mrs. Casey's wages were not deductible as IRWEs, plaintiff engaged in SGA, plaintiff was overpaid $48,313 in Title II benefits, and recovery of the overpayments could not be waived because plaintiff was at fault in connection with the overpayment (Tr. 16-17). This decision became the final decision of the Commissioner, and plaintiff appealed the denial of his request for waiver of the overpayments to the United States District Court for the District of Nebraska (Tr. 6-7, 179-187). The district court reversed and remanded the Commissioner's decision, finding the record lacked substantial evidence to support the ALJ's determination that recovery of the overpayments could not be waived (Tr. 187). The SSA Appeals Council vacated the final decision of the Commissioner and remanded the case for further proceedings (Tr. 188-89).

A remand hearing was held before a second ALJ on September 19, 2006 (Tr. 322-356). In a decision dated October 27, 2006, the ALJ determined Mrs. Casey's wages were not deductible as IRWEs, plaintiff's entitlement to disability insurance benefits terminated at the close of May 1995 due to the performance of SGA after the expiration of his trial work period and extended period of eligibility, plaintiff was overpaid $48,313 in disability and child's insurance benefits, and

recovery of the overpayments could not be waived (Tr. 169-171). This decision became the final decision of the Commissioner (Tr. 143-146), and plaintiff petitioned this Court for judicial review.

## II. STANDARD OF REVIEW

The Court reviews the record ". . . to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)(quoting *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Prosch*, 201 F.3d at 1012. "[The Court] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

## III. DISCUSSION

There are two main issues before the Court: (1) whether substantial evidence in the record supports the ALJ's determination that plaintiff's entitlement to disability insurance benefits terminated at the close of May 1995 due to the performance of SGA, and (2) whether substantial evidence in the record supports the ALJ's determination that recovery of the

-5-

overpaid benefits could not be waived.  These issues are addressed accordingly.

**Termination of Benefits**

A recipient of disability insurance benefits becomes ineligible for those benefits if he engages in SGA.  20 C.F.R. § 404.1586(a)(3).[2]  Blind individuals under the age of 55, such as the plaintiff, perform SGA when their monthly earnings average more than the amounts stated in paragraph (d) of § 404.1584.[3] Impairment-related work expenses (IRWE) are deducted from an individual's earnings before determining whether his monthly earnings exceed the SGA level.  20 C.F.R. § 404.1576(a).

Here, plaintiff's unadjusted earnings exceeded the SGA level for each year in question.[4]  However, plaintiff claims the wages he paid his wife were deductible IRWEs, and his earnings were below the SGA level once these amounts were deducted.[5]  The

---

[2] Plaintiff's trial work period and extended period of eligibility terminated prior to March of 1995 (Tr. 332, 163).

[3] For the years in question, SGA was demonstrated by average monthly earnings of $940 in 1995, $960 in 1996, $1,000 in 1997, and $1,050 in 1998.  20 C.F.R. § 404.1584(d).

[4] Plaintiff earned $17,478.40 in 1995, $21,004.23 in 1996, $24,057.62 in 1997, and $26,244.00 in 1998 (Tr. 72, 85, 99, 227).

[5] Plaintiff paid his wife $11,711.10 in 1995, $16,780 in 1996, $20,979 in 1997, and $19,883 in 1998 (Tr. 232, 75, 88, 102).  Defendant relies on different figures for Mrs. Casey's earnings, which are her net earnings, and appears to rely on these figures in determining plaintiff's earnings for purposes of SGA (*See* Filing No. 13 at 3; Tr. 78, 91, 107).  The Court has stated the figures for Mrs. Casey's gross earnings because it finds that it should use these figures when determining plaintiff's adjusted earnings.

ALJ found Mrs. Casey's wages were not deductible because plaintiff did not actually pay for her services, or at best, was reimbursed his expenses (Tr. 169). In addition, the ALJ found that even if plaintiff was entitled to deduct wages he paid his wife, the amount of the wages was unreasonable, and if plaintiff claimed deductions based on a reasonable amount, his earnings would have exceeded the SGA level for blind individuals beginning March 1995 (Tr. 170).

There is substantial evidence in the record to support the ALJ's finding that the amount of Mrs. Casey's wages was unreasonable, and plaintiff's earnings would have exceeded the SGA level if he had claimed deductions based on a reasonable amount. Therefore, it is not necessary to determine whether the ALJ's finding that Mrs. Casey's wages were not deductible is also supported by substantial evidence in the record.

The deductible amount of IRWEs is subject to reasonable limits. 20 C.F.R. § 404.1576(a). Section 404.1576(f) provides in relevant part:

> (f) Limits on deductions.
> (1) We will deduct the actual amounts you pay towards your impairment-related work expenses unless the amounts are unreasonable. . . . For items and services that are not listed in the Medicare guidelines, and for items and services that are listed in the Medicare guidelines but for which such guides cannot be used because the information is not readily

>             available, we will consider the
>             amount you pay to be reasonable if
>             it does not exceed the standard or
>             normal charge for the same or
>             similar item(s) or service(s) in
>             your community. . . .

20 C.F.R. § 404.1576(f)(1).

In this case, there is substantial evidence that the wages plaintiff paid his wife in 1995-1998 were unreasonable. Beginning in 1995, plaintiff increased his wife's pay rate to $20 per hour (Tr. 31, 342). Although, Mrs. Casey took on some new duties in 1995, her duties primarily included reading and driving (Tr. 62), which were the same duties she had provided since she started working for the plaintiff. Due to the fact that plaintiff initially paid his wife $4 per hour for reading and driving services (Tr. 306, 353), the substantial increase in her hourly rate alone indicates that $20 per hour was an unreasonable amount for the services she provided from 1995-1998. Indeed, plaintiff testified that the $20 per hour rate was partially based on reasons unrelated to the value of his wife's services, as he stated that one of the reasons he decided to pay his wife $20 per hour was that the rate would help her build earnings for Social Security (Tr. 31).

In addition, evidence in the record indicates that Mrs. Casey's hourly wage was 500% more than the standard rate paid to individuals who provided reading and driving services for the blind. According to an internal agency document, an SSA employee

-8-

received information from the Texas Commission for the Blind and the Texas State Library's Division for the Blind and Physically Handicapped that the job of reader and driver for the blind was a minimum-wage paying job which paid between $4.25 and $5.15 per hour from 1995-1998 (Tr. 290). This information was generally corroborated by plaintiff's testimony that the State of Iowa paid individuals who read to the blind and did not have any other duties $3 per hour in the early 1980s, and $4 per hour was a reasonable rate for the reading and driving services Mrs. Casey provided in the late 1980s (Tr. 353).[6] In light of the facts that Mrs. Casey's duties primarily included reading and driving, plaintiff initially paid her $4 per hour for reading and driving services, and the standard rate of pay for readers and drivers for the blind was minimum-wage in the community where plaintiff lived in 1995-1998, substantial evidence supports the ALJ's finding that $20 per hour was an unreasonable amount for the services Mrs. Casey provided from 1995-1998.

Even though substantial evidence supports a finding that plaintiff paid an unreasonable amount for his wife's services, Social Security statutes, regulations, and guidelines suggest that plaintiff would still be entitled to a deduction from his earnings for a reasonable amount for his wife's

---

[6] The federal minimum-wage rate was $3.35 per hour from January 1981 to April 1990 (Tr. 144).

services.  *See* 42 U.S.C. § 423(d)(4)(A); 20 C.F.R. § 404.1576(a); POMS DI 10520.025D.  The ALJ impliedly determined that $4.25 - $5.15 per hour was a reasonable amount for Mrs. Casey's services which plaintiff could deduct from his earnings (Tr. 170).  While a rate above minimum-wage may have been reasonable due to the hours Mrs. Casey worked and the additional duties she performed, plaintiff did not offer any evidence that the standard rate of pay for services similar to those provided by his wife was more than $5.15 per hour.  Thus, the ALJ properly used the standard rate paid to blind readers and drivers as the deductible amount.  As noted by the ALJ, if plaintiff would have claimed deductions based on an hourly rate of $5.15 per hour, his earnings would have exceeded the SGA level beginning March 1995.

Further, the Court notes that even if a rate over minimum-wage would have been reasonable, there is substantial evidence in the record to support a finding that the hourly rate plaintiff would have had to pay his wife to reduce his earnings below the SGA level would not be reasonable.  Based on the Court's calculations, plaintiff's adjusted earnings would have exceeded the SGA level for each year in question unless he paid his wife at least $11 per hour.  Substantial evidence supports a finding that this rate would be unreasonable due to the facts that this amount is more than double the rate plaintiff initially

-10-

paid his wife and the standard rate paid to blind readers and drivers during the relevant time period.

Based on the foregoing, substantial evidence supports the ALJ's finding that the amount plaintiff paid his wife was unreasonable, and if plaintiff had claimed deductions based on a reasonable amount, his earnings would still have exceeded the SGA level beginning March 1995. As a result, plaintiff's entitlement to disability insurance benefits terminated at the close of May 1995 due to the performance of SGA, and plaintiff was overpaid disability and child's insurance benefits in the amount of $48,313.

**Waiver of Recovery of the Overpaid Benefits**

The ALJ determined recovery of the overpaid benefits could not be waived because although plaintiff was without fault in the overpayment, recovery of the overpayments would not deprive plaintiff of income or resources required to meet ordinary and necessary living expenses, and there was no evidence that, by reason of the erroneously paid benefits, plaintiff changed his position for the worse or relinquished a valuable right (Tr. 170).

For a person who is without fault in the overpayment of benefits, recovery of the benefits can be waived if recovery would defeat the purpose of Title II of the Act or be against

equity and good conscience.  20 C.F.R. § 404.506.  Recovery of the overpayments ". . . will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."  20 C.F.R. § 404.508(b).

The Program Operations Manual System ("POMS"), which are administrative guidelines issued by the SSA for processing claims, provide additional guidance as to when recovery will defeat the purpose of Title II.  According to POMS GN 02250.115, recovery will defeat the purpose of Title II if a person goes into debt to meet his ordinary and necessary living expenses during recovery of the overpayments, and recovery may defeat the purpose of Title II if recovery of the overpayments reduces a person's assets to below $5,000 for a person with one dependent, plus $600 for each additional dependent.  POMS GN 02250.115A2, A4.  Assets may be liquidated to repay an overpayment and are available for repayment to the extent their total value exceeds $5,000 for a person with one dependent, plus $600 for each additional dependent.  POMS GN 02250.115A4; POMS GN 02250.125.  Certain items are not considered assets, such as the family home and car, but non-income producing Individual Retirement Accounts ("IRA") should be considered assets.  POMS GN 02250.125B.

In this case, there is substantial evidence on the record as a whole to support the ALJ's finding that recovery of the overpayments would not defeat the purpose of Title II of the Act.  According to the plaintiff, his monthly expenses exceed his and his wife's joint income by about $400 (Tr. 282-284).  However, plaintiff's assets include three non-income generating IRAs (Tr. 281, 286, 351).  Based on plaintiff's representations, his interest in the IRAs is $77,000, and it would cost him $67,101.25 to repay the overpaid benefits due to withdrawal penalties and taxes (Filing No. 8 at 21).  Taking these representations as true, plaintiff would be left with $9,898.75 in available assets.  As a result, plaintiff would not go into debt to meet his ordinary and necessary living expenses during recovery and his assets would not fall below the amount stated in the POMS during recovery.  Plaintiff argues that because his monthly expenses exceed his income, his assets would fall below the amount stated in the POMS after 10 months.  However, plaintiff's assets would not fall below the POMS floor *during recovery*, and therefore, there is substantial evidence to support the ALJ's finding that recovery would not defeat the purpose of Title II.

In addition, there is no evidence that recovery of the overpayments would be against equity and good conscience, *see* 20 C.F.R. § 404.509, and plaintiff has not argued that he is

entitled to waiver on this ground (*See* Filing No. 8).  Thus, the ALJ's finding that recovery of the overpayments cannot be waived is supported by substantial evidence in the record.

    Accordingly, the decision of the Commissioner is affirmed.  A separate order will be entered in accordance with this memorandum.

    DATED this 3rd day of June, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court